## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

<hr>

BARBARA WOODHAM,

        Plaintiff,

CASE NO. 1:23-cv-10650
HON. _____

**DEFENDANT'S NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, 1441, and 1446 [DIVERSITY JURISDICTION]**

v

Complaint Filed: February 13, 2023
Alpena Circuit Court
Case No. 2023-1983-NO

DECORATIVE PANELS
INTERNATIONAL, INC.,

        Defendant.

_____/

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant, Decorative Panels International, Inc. ("Defendant" or "DPI"), by its undersigned counsel, hereby removes this action from the Circuit Court of Alpena County, State of Michigan, to the United States District Court for the Eastern District of Michigan. Defendant removes on the grounds that complete diversity exists between Plaintiff, a citizen of Michigan, and Defendant, a citizen of Delaware and Ohio. Further, the amount in

controversy exceeds $75,000, and the foregoing facts were true when Plaintiff filed her Complaint.

## THE STATE COURT ACTION

1.    On February 8, 2023, Plaintiff, Barbara Woodham ("Woodham" or "Plaintiff"), commenced a civil action in the Circuit Court of the State of Michigan, Alpena County, by filing a Complaint, styled *Barbara Ann Woodham v. Decorative Panels, International, Inc.*, Case No. 2023-1983-NO. On February 23, 2023, Defendant's registered agent The Corporation Company was served *via* Certified Mail with a copy of the Plaintiff's Complaint. Pursuant to 28 U.S.C. § 1446(a), a copy of all processes, pleadings, and orders served upon DPI in this action are attached as **Exhibit 1**.

## TIMELINESS

2.    This Notice of Removal is timely filed under 28 U.S.C. § 1446(b) because it is filed within 30 days of February 23, 2023, the date on which DPI was served with a copy of the Complaint, and within one year of the commencement of this action. Accordingly, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b).

## NATURE OF THE CLAIMS

3.     Plaintiff asserts the following claims against DPI: Private Nuisance (Count I) and Negligence (Count II). (Compl., Counts I–II, **Exhibit 1**). Defendant denies liability on Plaintiff's claims.

4.     Plaintiff's allegations pertain to DPI's facility in Alpena County located at 416 Ford Avenue, Alpena, MI 49707. (*Id.* at ¶ 2).

## THE VENUE REQUIREMENT IS MET

5.     "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

6.     Venue of this removed action is proper in this District under 28 U.S.C. § 1441(a) because the Eastern District of Michigan encompasses the Alpena County Circuit Court where Plaintiff filed her Complaint.

## DIVERSITY OF CITIZENSHIP EXISTS

7.     Generally, a civil case brought in a state court may be removed by a defendant to federal court if it could have been brought there originally. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over

Plaintiff's claims because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00.

8.     At the time Plaintiff filed this action and to the present date, complete diversity exists between Plaintiff and Defendant.

9.     The Plaintiff is a citizen of the State of Michigan. (Compl., ¶ 3, **Exhibit 1**).

10.     For removal purposes, if a party is a corporation, it is a citizen of both its state of incorporation and the state where its principal place of business is located. 28 U.S.C. § 1332(c)(1); *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 629 (6th Cir. 1992) ("A corporation is deemed a citizen of any state by which it has been incorporated, and of any state in which its principal place of business is located.") (citing 28 U.S.C. § 1332(c)(1)). The United States Supreme Court has held that a corporation's principal place of business refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010). This is typically the place where the corporation "maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination" or its "nerve center." *Id*. The Sixth Circuit and this Court follow this same test outlined by the Supreme Court and typically conclude that the corporate headquarters is the "nerve center." *Prime Rate Premium Fin. Corp. v. Larson*, 930 F.3d 759, 765 (6th Cir. 2019) (applying the *Hertz* nerve center test to

conclude that a corporation's headquarters "proves its principal place of business"); *see also Estate of Frederick Rode v. Citizens Ins. Co.*, No. 17-10615, 2017 U.S. Dist. LEXIS 159694, at *3 (E.D. Mich. Sept. 28, 2017) (stating that "[a] corporation's 'principal place of business' is its 'nerve center,' . . . [t]ypically where the corporation's headquarters are located.").

11. DPI is a corporation, rendering it a citizen of two states: (1) the State of Delaware, where DPI is incorporated, and (2) the State of Ohio, where DPI maintains its headquarters. (Compl., ¶ 1, **Exhibit 1**).[1] DPI is not a citizen of Michigan—it is a Delaware corporation with its principal place of business in Ohio. (*Id.*).

12. Therefore, diversity of citizenship exists under 28 U.S.C. § 1332.

## THE AMOUNT IN CONTROVERSY IS SATISFIED

13. A federal district court has original diversity jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest. 28 U.S.C. § 1332(a). As the Supreme Court has made clear, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). A defendant may remove a case by showing that "it is more likely than not" that the plaintiff's

---

[1] Although Plaintiff incorrectly claims DPI is a "foreign limited liability company," (Compl., ¶ 1, **Exhibit 1**), DPI is indeed incorporated in Delaware and maintains its principal place of business in Ohio.

claims meet the federal required amount in controversy. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993). A removing defendant must show that the amount in controversy requirement is satisfied only by a preponderance of the evidence. *See Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001).

14.     This is an action for damages resulting from Plaintiff's property allegedly being "invaded by noxious odor-causing chemicals emanating from Defendant's wastewater lagoons." (Compl., ¶ 26, **Exhibit 1**). Plaintiff alleges "the foul odors coming from DPI have caused a diminution of Plaintiff's property value and have interfered with Plaintiff's use and enjoyment of her property." (*Id.* at ¶ 30).

15.     Plaintiff asserts that the "foul odors coming from DPI have caused Plaintiff health problems, including shortness of breath, nausea and vomiting, exacerbation of preexisting COPD, and severe headaches." (*Id.* at ¶ 31). Plaintiff suggests these alleged issues are the result of DPI failing to "maintain its lagoons in such a way as to avoid an emission of noxious, odoriferous chemicals which pour over nearby residential neighborhoods including that of Plaintiff." (*Id.* at ¶ 32).

16.     In her Complaint, Plaintiff asserts that the "amount in controversy ***greatly exceeds Twenty-Five Thousand Dollars ($25,000)***, exclusive of costs, interest, and attorney fees." (*Id.* at ¶ 5) (emphasis added). Plaintiff has requested a trial by jury. (*Id.* at 8, Jury Demand).

17.     Specifically, in her Request for Relief, Count I, Private Nuisance, Plaintiff requested that the Court award an amount deemed appropriate in excess of $25,000.00, as well as costs and fees. (*Id.* at 6, Count I Request for Relief).

18.     Plaintiff also requests an injunction to prevent further invasion of Plaintiff's property by Defendant's noxious, odor-causing chemicals. (*Id.*). Likewise, in her Request for Relief for Negligence (Count II), Plaintiff makes the identical request for relief. (*Id.* at 7, Count II Request for Relief).

19.     Where the initial pleading seeks nonmonetary relief, such as injunctive relief, the defendant's notice of removal may assert the amount in controversy. *See* 28 U.S.C. § 1446(c)(2)(A)(i) ("the notice of removal may assert the amount in controversy if the initial pleading seeks . . . nonmonetary relief"); *see also Beasley v. Wells Fargo Bank, N.A.*, 744 F. App'x 906, 911 (6th Cir. 2018); *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.,* 621 F.3d 554, 560 (6th Cir. 2010) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.") (citation omitted). When injunctive relief is asserted, the "costs of complying with an injunction . . . may establish the amount-in-controversy." *Cleveland Hous. Renewal Project,* 621 F.3d at 560.

20.     As referenced in Plaintiff's Complaint, alleged odors from DPI's facility are the current subject of ongoing administrative proceedings with Michigan

Department of Environment, Great Lakes and Energy ("EGLE") for alleged violations of Mich. Admin. Code R. 336.1901 ("Rule 901"). (Compl., ¶¶ 21–24, **Exhibit 1**). Although DPI denies any violation of Rule 901, it is amicably working with EGLE and estimates the cost of corrective actions to satisfy current alleged violations is itself over $75,000.

21.     For example, DPI has informed EGLE that it "has recently allocated approximately $200,000 toward the purchase of two new floating aerators ($50K each or $100K) and a gearbox ($100K) for the currently disabled platform aerator which will supply currently anticipated aeration needs for summer 2023." DPI Resp. to EGLE (Nov. 23, 2022), available at https://www.egle.state.mi.us/aps/downloads/SRN/B1476/B1476_RVN_20221102.pdf. Any injunctive relief Plaintiff requests will likely be commensurate with or greater in cost to these corrective actions already identified by DPI.

22.     Plaintiff's complaint also alleges near-identical facts and injuries to a putative class action pending against DPI in this Court: *Matt Burcar et al. v. Decorative Panels International, Inc.*, 1:22-CV12054-MFL-PTM (E.D. Mich.), pending before the Honorable Matthew F. Leitman. Similar to Woodham, the plaintiffs in *Burcar* allege their properties have been physically invaded by noxious odors caused by DPI's facility, which cause them physical discomfort. *Id.*, ECF 17 at ¶¶ 16, 28, 35. In fact, the *Burcar* amended complaint alleges the same claims as

8

Woodham (Negligence and Nuisance). *Id.* at ¶¶ 63–89. The plaintiffs in *Burcar* have alleged that the amount in controversy for their identical claims exceeds $75,000, meaning their individual claims exceed the jurisdictional amount. *See id.* at ¶ 11; *see also Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (explaining that multiple plaintiffs may not aggregate their claims to reach the jurisdictional threshold).

23.     DPI believes that a good-faith estimate of the amount in controversy is "more likely than not" in excess of $75,000. *Everett*, 460 F.3d at 822.

24.     Therefore, based upon the face of Plaintiff's Complaint, the amount in controversy exceeds $75,000.

## CONCLUSION

25.     Accordingly, this action is removable pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship.

26.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being submitted for filing to the Clerk of the Circuit Court of Alpena County, State of Michigan, and is being served upon counsel of record for Plaintiff.

27.     If this Court has any questions regarding the propriety of this Notice of Removal, Defendant respectfully requests that it issue an Order to Show Cause, so that Defendant may have an opportunity to address such questions.

WHEREFORE, Defendant Decorative Panels International, Inc., pursuant to 28 U.S.C. § 1441 and in compliance with the requirements set forth in 28 U.S.C. § 1446(b), respectfully requests that this matter be removed to the United States District Court for the Eastern District of Michigan.

Dated:  March 21, 2023                    Respectfully submitted,

                                          */s/ Charles M. Denton*
                                          Charles M. Denton (P33269)
                                          Anthony Sallah (P84136)
                                          BARNES & THORNBURG LLP
                                          171 Monroe Ave NW, Ste. 1000
                                          Grand Rapids, Michigan 49503
                                          Phone: (616) 742-3974
                                          Facsimile: (616) 742-3999
                                          charles.denton@btlaw.com
                                          asallah@btlaw.com

                                          *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Notice of Removal was served on

Plaintiff's counsel on March 21, 2023 via email and First Class U.S. Mail:

Robert M. Giroux
28588 Northwestern Highway, Suite 100
Southfield, MI 48034
rgiroux@greatmiattorneys.com

*/s/ Charles M. Denton*
Charles M. Denton

# Exhibit 1

# State Court Complaint, Summons Received by Decorative Panels International, Inc.

CERTIFIED MAIL

neopost
02/20/2023
US POSTAGE $009.48⁰
FIRST-CLASS MAIL
ZIP 48034
041M11270981

7022 2410 0001 7318 4420

Metroplex MI 480 ZIP
TUE 21 FEB 2023 AM



**GIROUX TRIAL ATTORNEYS**
greatMIAttorneys.com

28588 Northwestern Highway, Suite 100
Southfield, MI 48034

Decorative Panels International, Inc.
c/o The Corporation Company
40600 Ann Arbor Road E., Suite 201
Plymouth, MI 48170



# Giroux Pappas
## TRIAL ATTORNEYS

February 20, 2023

**_Via Certified Mail_**

Decorative Panels International, Inc.
% The Corporation Company
40600 Ann Arbor Road E., Suite 201
Plymouth, MI  48170

      Re:    _Woodham v. Decorative Panelse_
                Alpena County Circuit Court Case No. 23-1983-NO
                Our File No.  2813

To Whom It May Concer:

Enclosed with regard to the above-captioned matter please find the _Summons, Complaint and Demand for Jury Trial_, which has been filed against you with the Alpena County Circuit Court.  Please forward the enclosed documents to your insurance carrier. Pursuant to the Michigan Court Rules, you have 28 days to formally respond.

Thank you for your immediate attention to this matter.

                          Sincerely,

                          ROBERT M. GIROUX

RMG/ss

Enclosures

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>**JUDICIAL DISTRICT**<br>26TH **JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS** | **CASE NO.**<br>2023- 1983 -NO |
|---|---|---|

| Court address<br>720 W. CHISHOLM, SUITE 1, ALPENA, MI 49707-2453 | Court telephone no.<br>(989) 354-9573 |
|---|---|

| Plaintiff's name(s), address(es), and telephone no(s).<br><br>BARBARA WOODHAM | v | Defendant's name(s), address(es), and telephone no(s).<br><br>DECORATIVE PANELS INTERNATIONAL, INC.<br>c/o THE CORPORATION COMPANY<br>40600 ANN ARBOR ROAD E., SUITE 201<br>PLYMOUTH, MI 48170 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>ROBERT M. GIROUX (P-47966)<br>28588 NORTHWESTERN HIGHWAY, SUITE 100<br>SOUTHFIELD, MI 48034<br>(248) 531-8665<br>rgiroux@greatmiattorneys.com | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____ .

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>2-13-2023 | Expiration date*<br>5-13-2023 | Court clerk<br>*Keri Bertrand* |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19) **SUMMONS**        MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**PROOF OF SERVICE**

| SUMMONS |
| Case No. 2023- 1983 -NO |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:  (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that:  (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled  Fee $ | | Signature _____ |
| Incorrect address fee $ | Miles traveled  Fee $ | TOTAL FEE $ | Name (type or print) _____ |
| | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                                            Date

My commission expires: _____   Signature: _____
                                          Date                                        Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                         Attachments

_____ on _____
                            Day, date, time

_____ on behalf of _____ .
Signature

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF ALPENA

BARBARA ANN WOODHAM,

           Plaintiff,

-vs-

DECORATIVE PANELS
INTERNATIONAL INC.,

           Defendant.

_____/

Case No.: 23-__1983__-NO

Hon. _____

ROBER GIROUX (P-47966)
GIROUX PAPPAS TRIAL ATTORNEYS, P.C.
Attorney for Plaintiff
28588 Northwestern Highway, Suite 100
Southfield, MI 48034
(248) 531-8665
rgiroux@greatMIattorneys.com
_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

       There is no other civil action between these parties arising out of the same transaction or occurrence alleged in this Complaint pending in this Court.

               /s/ Robert M. Giroux
               ROBERT M. GIROUX (P-47966)

      Plaintiff, BARBARA ANN WOODHAM, by and through her attorneys, Giroux Pappas Trial Attorneys, P.C., and for her Complaint states as follows:

## **BACKGROUND AND JURISDICTIONAL AVERMENTS**

      1.    Defendant Decorative Panels International Inc. ("DPI") is a foreign limited liability company incorporated in Delaware with its principal place of business at 2900 Hill Ave Toledo, OH, 43607.

2.      Defendant DPI operates a facility producing hardboard at 416 Ford Avenue, Alpena, MI 49707 in the County of Alpena.

3.      At all times relevant hereto, Plaintiff Barbara Woodham owned and resided in the home at 904 Ford Avenue, Alpena, MI 49707 in the County of Alpena.

4.      The nuisance at issue here occurred within the County of Alpena.

5.      The amount in controversy greatly exceeds Twenty-Five Thousand Dollars ($25,000), exclusive of costs, interest, and attorney fees.

6.      Jurisdiction and venue are properly vested in this court.

## GENERAL ALLEGATIONS

### *Defendant's Operation*

7.      Defendant's business is the manufacture of decorative paneling for home and commercial applications.

8.      The panels that Defendant produces are made of hardboard, an engineered wood product sometimes called high-density fiberboard.

9.      While Defendant completes final assembly of its panels in Toledo, the hardboard used in the panels is produced in its Alpena, Michigan manufacturing plant ("the Facility").

10.     The Facility is located at 416 Ford Avenue, Alpena, MI 49707, adjacent to a residential neighborhood zoned for single-family homes.

11.     While the manufacturing of hardboard is a complex procedure utilizing specialized equipment and processes, the essence of making hardboard is the breaking down of wood into fibers and then the pressing of those fibers into boards using heat and pressure.

### *Wastewater Lagoons*

12.     Breaking down wood (usually wood chips) into wood fiber or pulp is a process that produces wastewater as a byproduct.

13.     This wastewater needs to be treated before it can be returned to the environment.

14.     If done correctly, treating the water in wastewater lagoons is a safe and effective method of handling waste in an environmentally responsible manner.

15.     Wastewater lagoons function when bacteria in the water break down waste in a variety of physical, biological, and chemical processes.

16.     To treat the wastewater produced at its Facility, DPI operates three lagoons.

17.     These lagoons have not been properly built and/or maintained, and they have been producing noxious chemicals including hydrogen sulfide that can be smelled—a smell variously described as rotting cabbage, decay, or death—a mile away or more.

18.     Properly functioning lagoons should not smell of death, decay, and cabbage.

19.     If wastewater lagoons produce these smells, it is a sign that the lagoon is overfilled, improperly maintained, improperly aerated, or otherwise neglected.

20.     Defendant has exclusive control over the lagoons it operates at the Facility.

### *State Involvement*

21.     DPI has a storied history of state intervention when it comes to environmental impact; while some of this history deals with a separate drinking water

contamination issue, more recent State intervention deals with the foul smell coming from DPI's lagoons.

22.     On July 27, 2020, the Michigan Department of Environment, Great Lakes and Energy issued a Notice of Aesthetic Impact which served to "notify the public of environmental conditions at the Property which exceed the aesthetic criteria established pursuant to Section 20120a of the [Natural Resources and Environmental Protection Act]." (Exhibit A, Notice of Aesthetic Impact).

23.     On August 5, 2022, the Department of Environment, Great Lakes and Energy Air Quality Division issued a violation notice for the lagoon odor, determining that "the odors that were observed were of sufficient intensity, frequency and duration so as to constitute a violation of Rule 901 of the administrative rules promulgated under Act 451." (Exhibit B, Notice of Violation).

24.     Upon information and belief, DPI has been issued at least two other notices of violation since 2019.

### *Impact on Plaintiff*

25.     Plaintiff resides less than half a mile from the Facility.

26.     On recurrent occasions, Plaintiff's property has been invaded by noxious odor-causing chemicals emanating from Defendant's wastewater lagoons.

27.     Plaintiff has had to cancel events and refrain from inviting over guests because of the offensive and often sickening smell.

28.     Plaintiff has had to keep her windows closed and stay indoors on numerous occasions when the smell of death wafted into her yard.

29.     The odors emanating from the Facility would be offensive and likely sickening to any reasonable person in normal health.

-4-

30.     The foul odors coming from DPI have caused a diminution of Plaintiff's property value and have interfered with Plaintiff's use and enjoyment of her property.

31.     The foul odors coming from DPI have caused Plaintiff health problems including shortness of breath, nausea and vomiting, exacerbation of preexisting COPD, and severe headaches.

32.     Defendant has failed to maintain its lagoons in such a way as to avoid the emission of noxious, odoriferous chemicals which pour over nearby residential neighborhoods including that of Plaintiff.

## COUNT I – PRIVATE NUISANCE

33.     Plaintiff incorporates by reference all preceding paragraphs in this Complaint.

34.     Plaintiff resides less than half a mile from the Facility and on numerous occasions has had her property invaded by noxious, odor-causing chemicals from Defendant's improperly maintained lagoons.

35.     The smells emanating from Defendant's lagoons would be offensive to any reasonable person, and they substantially impact Plaintiff's use and enjoyment of her property.

36.     The smell emanating from Defendant's lagoons is substantial and unreasonably interferes with Plaintiff's use and enjoyment of her property, the very definition of a nuisance.

37.     Defendant had been put on notice numerous times about the odors it is producing, both by the public and the State.

38.     Defendant owes a duty to its neighbors including Plaintiff to properly maintain its facility to avoid interfering with private property rights.

39. Defendant cut corners in the construction, maintenance, and/or operation of its wastewater lagoons, such that they produce unreasonable odors.

40. As a direct and proximate result of Defendant's nuisance, Plaintiff has had her property value diminished and has had her use and enjoyment of her property interfered with.

41. As a further direct and proximate result of Defendant's nuisance, Plaintiff has suffered health problems including but not limited to nausea and vomiting, shortness of breath, aggravation of preexisting COPD, and severe headaches.

42. Plaintiff did not consent to the invasion of her property by noxious odors. Any social utility provided by the Facility pales in comparison to the negative impact it has had on Plaintiff's property value, Plaintiff's use and enjoyment of her property, and Plaintiff's overall health.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award damages in an amount deemed appropriate in excess of $25,000.00, as well as costs and attorney fees. Plaintiff also requests an injunction to prevent further invasion of Plaintiff's property by Defendant's noxious, odor-causing chemicals.

## COUNT II – NEGLIGENCE

43. Plaintiff incorporates by reference all preceding paragraphs in this Complaint.

44. Defendant owed Plaintiff a duty to operate its Facility with ordinary care and diligence to avoid spewing noxious chemicals that interfere with Plaintiff's use and enjoyment of her property, that diminish property values, and that cause Plaintiff serious and ongoing health problems.

-6-

45.     Defendant consistently breached this duty by cutting corners with its wastewater lagoons, either improperly building, maintaining, or operating the lagoons in such a way that the buildup of sludge causes H2S and other odoriferous chemicals to be released to neighboring properties including that of Plaintiff.

46.     As a direct and proximate result of Defendant's nuisance, Plaintiff has had her property value diminished and has had her use and enjoyment of her property interfered with.

47.     As a further direct and proximate result of Defendant's nuisance, Plaintiff has suffered health problems including but not limited to nausea and vomiting, shortness of breath, aggravation of preexisting COPD, and severe headaches.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court award damages in an amount deemed appropriate in excess of $25,000.00, as well as costs and attorney fees. Plaintiff also requests an injunction to prevent further invasion of Plaintiff's property by Defendant's noxious, odor-causing chemicals.

Respectfully submitted,

ROBERT M. GIROUX (P-47966)
Attorney for Plaintiff
28588 Northwestern Highway, Suite 100
Southfield, MI 48034
(248) 531-8665; Fax (248) 308-5540
rgiroux@greatmiattorneys.com

Dated: February 8, 2023

## **JURY DEMAND**

Plaintiff,   BARBARA ANN WOODHAM, by and through her attorneys, Giroux

Pappas Trial Attorneys, respectfully requests a trial by jury in this matter.

Respectfully submitted,

ROBERT M. GIROUX (P-47966)
Attorney for Plaintiff
28588 Northwestern Highway, Suite 100
Southfield, MI 48034
(248) 531-8665; Fax (248) 308-5540
rgiroux@greatmiattorneys.com

Dated: February 8, 2023

# Exhibit A

Received

Date 7/27/20 Time 11:21a

Alpena Register of Deeds

L: **536** P: **364** NOTIC
07/27/2020 01:18 PM     Page: 1 of 7
Catherine Murphy, Register Alpena Co., MI          $30.00

# NOTICE OF AESTHETIC IMPACT

MDEGLE Reference No: **NAI-RRD-201-19-001**

This Notice of Aesthetic Impact (Notice) has been recorded with the Alpena County Register of Deeds to protect public welfare by describing environmental conditions which impart aesthetic impacts at the Property located at 412 Ford Avenue, Alpena, Alpena County and legally described in the attached Exhibit 1 (Legal Description of the Property). Exhibit 2 (Limits of Aesthetic Impact) provides a survey of the portion of the property that is subject to this Notice.

The Property is associated with Abitibi-Price, Corp, 04000039 for which response activitites were conducted pursuant to Part 201, Environmental Remediation, of the Natural Resources and Environmental Protection Act, 1994 PA 451, as amended (NREPA), MCL 324.20101 *et seq.* The Property described contains hazardous substances in excess of the concentrations developed as the unrestricted residential criteria under Section 20120a(1)(a) or (17) of the NREPA. The MDEGLE recommends that prospective purchasers or users of the Property undertake appropriate due diligence prior to acquiring or using this Property, and undertake appropriate actions to comply with the due care requirements of Section 20107a of the NREPA.

This Notice was recorded to notify the public of environmental conditions at the Property which exceed the aesthetic criteria established pursuant to Section 20120a of the NREPA. This Notice is based upon information available at the time the response activitites were implemented. Failure of response activities to achieve and maintain the cleanup criteria; failure to maintain any requirements specified by the response activities; future changes in the environmental condition of the Property; changes in the cleanup criteria developed under Section 20120a of the NREPA; or the discovery of environmental conditions at the Property that were not accounted when the response activities were implemented may result in this Notice not being protective of public welfare.

Definitions

For the purposes of this Notice, the following definitions shall apply:

"MDEGLE" means the Michigan Department of Environment, Great Lakes and Energy, its successor entities, and those persons or entities acting on its behalf.

"Owner" means at any given time the then-current title holder of all or any portion of the Property.

"Property" means the real property as described in Exhibit 1 (Legal Description of the Property) of this Notice that is subject to the terms and conditions described herein.

L: 536 P: 364 NOTIC
07/27/2020 01:18 PM          Page: 2 of 7
Catherine Murphy, Register Alpena Co., MI          $30.00

All other terms used in this document which are defined in Part 3, Definitions, of the NREPA;
Part 201 of the NREPA; or the Part 201 Administrative Rules, Michigan Administrative Code,
2013 AACS R 299.1 – R 299.50, shall have the same meaning in this document as in Parts 3
and 201 of the NREPA and the Part 201 Administrative Rules, as of the date of filing of this
Notice.

<u>Summary of Response Activities and Environmental Contamination</u>

The subject Part 201 site (Abitibi-Price, Corp, Site ID No. 04000039) was constructed in 1957
by Abitibi-Price Corporation (now Resolute Forest Products, Inc.) and was used to produce
unfinished hardboard paneling from raw wood materials (logs, wood chips). The environmental
impacts related to this Notice of Aesthetic Impact are associated with an area historically
referred to as the Former Waste Burn Area (FWBA). The FWBA was used between 1957 and
1977 for burning office trash, scrap hardboard and possibly waste paint sludge generated at the
facility. Abitibi-Price, Corp. sold the facility in 1992.

Previous investigations completed at the site revealed that soil and groundwater were impacted
by volatile organic compounds (VOCs) and metals as a result of operation of the FWBA.
Approximately 9,170 cubic yards of soil was excavated and transported off-site for disposal
between 1990 and 1994. Several groundwater sampling events were subsequently performed
between 1997 and 1999 to assess risks posed to groundwater and Lake Huron from residual
concentrations of VOCs and metals in soil, and to Lake Huron from concentrations of
contaminants of concern identified in groundwater. The results of these investigations indicated
that residual impacts to soil did not require further assessment or remedial actions, but levels of
toluene, ethylbenzene, xylenes and barium in groundwater posed a risk to Lake Huron since
dissolved-phase concentrations for these constituents exceeded generic Groundwater-Surface
Water Interface (GSI) Criteria. In March of 2000, the MDEGLE approved use of Acute Mixing-
Zone Criteria (AMZC) for the site. Toluene, ethylbenzene and xylenes were the only
contaminants present in groundwater at concentrations exceeding the AMZCs.

In September of 2000, an Interim Response Plan (IRP) was submitted to MDEGLE to propose a
remedy to address the area of groundwater with toluene, ethylbenzene and xylenes exceeding
the AMZCs. The IRP specified enhanced bioremediation through injection of Oxygen Release
Compound™ (ORC). Two separate injection events were completed at the FWBA in April of
2001 and September of 2002. Concentrations of VOCs were effectively reduced to levels below
the AMZC in the southern area of the FWBA, but not in the northern area of the FWBA.

Additional soil and groundwater investigations were conducted in the northern portion of the
FWBA in 2004 and 2005. VOCs were identified in vadose-zone soil at concentrations exceeding
applicable cleanup criteria, and a small area of VOC-impacted groundwater with concentrations
significantly higher than historical concentrations within the FWBA was delineated. In January of
2006, an IRP Addendum was prepared and submitted to MDEGLE to outline a proposed
remedy to address the impacted soil and groundwater in the northern area of the FWBA. The
proposed remedy included soil excavation to address impacted soil. For impacted groundwater,
the remedy included chemical oxidation through injections of RegenOx™ in the area with
highest VOC concentrations followed by continuation of enhanced bioremediation through
plume-wide injections of ORC Advanced™. In addition, application of ORC Advanced™ in the
base of the excavation subsequent to soil remediation was also proposed.

L: 536 P: 364 NOTIC

07/27/2020 01:18 PM                          Page: 3 of 7
Catherine Murphy, Register Alpena Co., MI   $30.00

The soil excavation and associated application of ORC Advanced™ to the base of the excavation was completed in early May of 2006. In late May and early June of 2006, ORC Advanced™ was injected across the remaining groundwater plume with the exception of the area to be treated via chemical oxidation. From late May 2006 to November 2006, six injections of RegenOx™ reagent were conducted in an approximately 1,000 square feet area. In November 2006, ORC Advanced™ was injected in this area. After completion of implementation of the IRP Addendum, groundwater monitoring was performed at the site from 2007 to 2014, with frequency and scope of the monitoring adjusted over time as approved by MDEGLE. Groundwater monitoring performed from April 2014 to June 2015 documented dissolved-phase concentrations had been reduced to below the AMZC established for the site, as well as Residential Health-based Drinking Water Criteria. The concentrations of xylenes in one groundwater monitoring well remained above the aesthetic drinking water criteria established for this constituent.

1.     Declaration of Exceedance of Aesthetic-Based Cleanup Criterio

The following hazardous substance is present at the Property in concentrations that exceed aesthetic-based cleanup criteria. The MDEGLE has determined that aesthetic impacts including adverse taste and odor characteristics to groundwater occur when concentrations exceed those listed below.

| Contaminant | Aesthetic-based Drinking Water Criterion Concentrations (µg/L) | Maximum Site Concentrations (µg/L) |
|---|---|---|
| Xylenes | 280 | 420 |

However, the presence of xylenes at the detected concentration is below the level determined to be harmful to human health as established by Section 5 of the Safe Drinking Water Act, 1976 PA 399, as amended, MCL 325.1005, or other applicable health-based criteria established pursuant to Part 201. Owners of property subject to this Notice are eligible for state assistance for water supply replacement when the concentration of regulated substances in the supply exceeds aesthetic-based criteria but is below, and will remain below, health-based drinking water criteria.

2.     Term of Notice.  This Notice shall run with the Property and is binding on the Owner; future owners; and their successors and assigns, lessees, easement holders, and any authorized agents, employees, or persons acting under their direction and control. This Notice shall continue in effect until it is determined that hazardous substances are no longer present at levels that exceed the aesthetic-based cleanup criteria. A copy of this Notice shall be provided to all future owners; and their successors and assigns, lessees, and easement holders by the person transferring the interest pursuant to Section 20116(1) of the NREPA. Improper modification or rescission of this Notice may result in the need to perform additional response activities to comply with Section 20107a of the NREPA.

3.     Enforcement of Notice.  The State of Michigan, through the MDEGLE, may individually enforce this Notice by legal action in a court of competent jurisdiction.

4.     Severability.  If any provision of this Notice is held to be invalid by any court of competent jurisdiction, the invalidity of that provision shall not affect the validity of any other provision of this Notice, which shall continue unimpaired and in full force and effect.

L: 536 P: 364 NOTIC
07/27/2020 01:18 PM                    Page: 4 of 7
Catharine Murphy, Register Alpena Co , MI
                                                       $30.00

5.    Authority to Execute Notice. The undersigned person executing this Notice is the
Owner, or has the express written permission of the Owner, and represents and certifies that he
or she is duly authorized to execute and record this Notice.

IN WITNESS WHEREOF, I, DPI SPV LLC, the current and legal Owner of the Property, has
caused this Notice to be executed on this  _11ᵗʰ_ day of _June_____, 2020_.  I
authorize  Resolute Forest Products, Inc. or its' designated agent to file the Notice of Aesthetic
Impact with the Alpena County Register of deeds for recording.

                                                              DPI SPV LLC

                          By: _Duncan Gray_____
                                    Signature

                          Name: _Duncan Gray_____
                                     Print or Type Name

                          Its: _Plant Manager -_____
                                   Title



STATE OF _Michigan_____
COUNTY OF _Alpena_____

The foregoing instrument was acknowledged before me this _11ᵗʰ June 2020__ by
_Duncan Gray_____, _Plant Manager · DPI_____, a
_____ Corporation, on behalf of the corporation.

                          _____
                                   Notary Public Signature



Prepared by:
Lawrence M. George
ATC Associates of North Carolina P.C.

When recorded return to:
ATC Associates of North Carolina, P.C.
2725 E. Millbrook Rd., Ste. 121
Raleigh, NC 27604

DEGLE Environmental Assistance Center          Page 9 of 11                        www.michigan.gov/egle
Phone: 800-662-9278                                                                EQP3900 (7/2017)

# Exhibit B



STATE OF MICHIGAN
DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND ENERGY
GAYLORD DISTRICT OFFICE

**EGLE**

GRETCHEN WHITMER
GOVERNOR

LIESL EICHLER CLARK
DIRECTOR

August 9, 2022

Dan VanMassenhove
Decorative Panels International
416 Ford Avenue
Alpena, Michigan 49707

SRN: B1476, Alpena County

Dear Dan VanMassenhove:

## VIOLATION NOTICE

On August 5, 2022, the Department of Environment, Great Lakes, and Energy (EGLE), Air Quality
Division (AQD), conducted an inspection of Decorative Panel International (DPI) located at 416
Ford Avenue, Alpena, Michigan. The purpose of this inspection was to determine DPI's
compliance with the requirements of the federal Clean Air Act; Part 55, Air Pollution Control, of the
Natural Resources and Environmental Protection Act, 1994 PA 451, as amended (Act 451); the
Air Pollution Control Rules; the conditions of Renewable Operating Permit (ROP) number MI-
ROP-B1476-2015a; and to investigate recent complaints which we received regarding foul odors
attributed to DPI's operations.

During the inspection, staff observed the following:

| Process Description | Rule/Permit Condition Violated | Comments |
|---|---|---|
| Lagoon Odor | R 336.1901(b) | On August 5, 2022, AQD staff followed up on a series of complaints that were received concerning foul sewer and hot rotting cooked cabbage odors coming from this facility and were able to verify that these odors were a violation of Rule 901(b). |
| Sweet woody odor, burnt wood odor | R 336.1901(b) | On August 5, 2022, AQD staff followed up on complaints of sweet burnt wood odors coming from this facility and were able to verify that these odors were a violation of Rule 901(b). |

In the professional judgment of AQD staff, the odors that were observed were of sufficient
intensity, frequency and duration so as to constitute a violation of Rule 901 of the administrative
rules promulgated under Act 451.

On August 5, 2022, around 11:42 am, AQD staff detected odors along Ford Avenue from Lake
Street to East Spratt Street. The wind was out of the south at approximately 5 to 10 mph. The
odors were impacting area residents. The odors observed were best described as sweet woody
and burnt wood odors attributed to DPI's hardboard manufacturing process and were evaluated
at a level 4 on the odor scale (distinct and definite objectionable odor).